IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA

RUSSELL E. FOLK,                    :          CIVIL ACTION
                Petitioner          :
                                    :
        VS.                         :
                                    :
JOHN M. McCULLOUGH (Warden),        :
        AND                         :
THE DISTRICT ATTORNEY OF            :
THE COUNTY OF BERKS,                :
        AND                         :
THE ATTORNEY GENERAL OF             :
THE STATE OF PENNSYLVANIA,          :
                Respondents         :          NO. 02-4745

REPORT AND RECOMMENDATION

CHARLES B. SMITH
UNITED STATES MAGISTRATE JUDGE

Now pending before the Court is a Petition for Writ of Habeas Corpus filed, pursuant to 28 U.S.C. § 2254, by a prisoner currently incarcerated in the State Correctional Institution at Houtzdale, Pennsylvania. For the reasons which follow, we recommend that the Petition be denied and dismissed in its entirety.

I.    PROCEDURAL HISTORY

On May 6, 1998, following a trial presided over by the Honorable Stephen B. Lieberman of the Berks County Court of Common Pleas, a jury convicted petitioner of rape, involuntary deviate sexual intercourse, sexual assault, aggravated indecent assault, endangering the welfare of a child and corruption of minors. The charges arose out of petitioner's repeated sexual assault of his

young grandson. Judge Lieberman sentenced petitioner to an aggregate term of six to thirty years incarceration.

Trial counsel thereafter requested and was granted leave to withdraw. New counsel was appointed and, on petitioner's behalf, filed a notice of appeal to the Pennsylvania Superior Court, raising the following claims:

1.    The trial court erred in precluding defendant from presenting any testimony or evidence concerning an alibi except for defendant's own testimony;

2.    Trial counsel was ineffective for failing to timely file defendant's notice of alibi defense;

3.    The trial court erred in denying defendant's pretrial motion to suppress defendant's statements made to criminal investigator Goetz and to BCCYS;

4.    The evidence presented at trial was insufficient to prove beyond a reasonable doubt the offenses for which defendant was convicted.

The Superior Court affirmed the judgment of sentence on July 9, 1999. Petitioner did not seek allowance of appeal from the Pennsylvania Supreme Court.

On April 5, 2000, petitioner sought relief under the Pennsylvania Post-Conviction Relief Act ("PCRA"), 42 Pa.C.S.A. § 9541, et seq. His petition listed the following claims for review:

1.    Counsel was ineffective for failing to have a stenographer present at his preliminary hearing to transcribe testimony;

2.    Trial counsel was ineffective for failing to file an alibi defense in a timely manner;

3.    Trial counsel was ineffective for failing to adequately investigate the defendant's alibi

2

defense;

4.  Appellate counsel was ineffective for failing to
    identify, in the defendant's appellate brief, the
    availability of the witnesses who would testify on
    his behalf regarding his alibi defense;

5.  Counsel was ineffective for failing to impeach
    Commonwealth witness Wanda Weidner;

6.  Counsel was ineffective for misrepresenting himself
    when he called the defendant to the stand to
    testify;

7.  Trial counsel was ineffective because he refused to
    file an appeal;

8.  Appellate counsel was ineffective for failing to
    personally meet with defendant, therefore denying
    him an "aggressive appeal";

9.  Appellate counsel was ineffective for failing to
    keep defendant adequately informed and provide him
    with a copy of the trial transcript so that he
    could participate in his appeal; and

10. Appellate counsel was ineffective for "threatening"
    to stop the appeal process.

The PCRA court appointed counsel who, subsequently, moved, pursuant
to Commonwealth v. Finley, 550 A.2d 213 (Pa. Super. Ct. 1988), for
leave to withdraw as counsel.  Judge Lieberman, sitting for the
PCRA court, granted this leave and issued a Notice of Intent to
dismiss the petition without a hearing.  On September 26, 2000, the
PCRA petition was officially dismissed.  Petitioner appealed to the
Pennsylvania Superior Court, alleging:

1.  PCRA court erred in dismissing defendant's pro se
    PCRA Motion summarily without a hearing;

2.  PCRA counsel rendered ineffective assistance by
    filing a no-merit letter without addressing several

3

claims defendant made for PCRA relief;

3.    PCRA counsel was ineffective for failing to communicate with defendant regarding his case;

4.    PCRA counsel was ineffective for failing to raise the following issues:

    a.    Trial counsel was ineffective for failing to investigate alibi witnesses;

    b.    Trial counsel was ineffective for failing to timely file a notice of alibi;

    c.    Trial counsel was ineffective for failing to file a motion for continuance to subpoena alibi witnesses;

    d.    Trial counsel was ineffective for failing to file a motion for reargument on the pretrial suppression issues;

    e.    Trial counsel was ineffective for failing to order transcription of all pretrial hearing transcripts before trial;

    f.    Trial counsel was ineffective for failing to impeach Wanda Weidner and Dr. Mark Reuben;

    g.    Trial counsel was ineffective for failing to object to the judge's charge to the jury on the grounds that it failed to contain charges on either delay of complaint in a sexual assault case or alibi defenses;

    h.    Trial counsel was ineffective for identifying himself as the Commonwealth when calling defendant to testify in front of the jury;

    i.    Trial counsel was ineffective for failing to present character evidence which existed at the time of trial;

    j.    Appellate counsel was ineffective for failing to identify all character and alibi witnesses in defendant's appeal;

5.    The sentence is illegal in that defendant was

sentenced to consecutive sentences;

6.    The sentence is illegal in that the court relied on information not in evidence in sentencing defendant.

Upon consideration of these claims, the Superior Court affirmed the lower court on November 21, 2001.  Thereafter, on July 10, 2002, the Pennsylvania Supreme Court denied allowance of appeal.  Commonwealth v. Folk, 805 A.2d 520 (Pa. 2002).

On August 19, 2002, petitioner filed the current Petition for Writ of Habeas Corpus, setting forth the following grounds for relief:

1.    Trial court error in denying petitioner's motion to suppress statements made without "Miranda" rights;

2.    Trial court error in precluding evidence and testimony of alibi;

3.    Trial court error in refusing to give proper instructions to the jury regarding alibi and late complaint by alleged victim;

4.    Trial court error in going beyond the maximum sentence for a first time felony;

5.    Ineffectiveness of trial counsel, Paul S. Missan, Esq., for failure to provide transcripts of preliminary or pretrial hearing;

6.    Ineffectiveness of trial counsel for failure to investigate meritorious facts of alibi;

7.    Ineffectiveness of trial counsel for failure to file timely "Notice of Alibi";

8.    Ineffectiveness of trial counsel for failure to ask for trial postponement to bring in alibi evidence;

9.    Ineffectiveness of trial counsel for failure to impeach two witnesses that did not have relative

evidence - Wanda Weidner and expert witness Mark Rueben;

10. Ineffectiveness of trial counsel for misrepresenting himself to jury during trial and making a mockery of defendant to jury (called himself the Commonwealth);

11. Ineffectiveness of trial counsel for failure to object to improper instructions to jury on alibi and late complaint;

12. Ineffectiveness of trial counsel for failure to present character evidence at trial or at sentencing;

13. Ineffectiveness of trial counsel for refusing to file a direct appeal;

14. Ineffective assistance of direct appeal counsel Jeanne M. Trivellini, Esq. for:

    a. Failure to assist defendant with a copy of transcripts;

    b. Failure to show that there indeed was evidence that an alibi did exist;

    c. Failure to make any attempt to interview the witnesses who would have shown that defendant could not be in 2 places at the same time of the alleged events;

    d. Failure to show the many points where trial counsel's representation was below effective assistance;

    e. Sending defendant a threatening letter, which stated that if he appealed to the Supreme Court and won a new trial, he would most likely receive more time.

Respondent, in turn, contends that these claims are either procedurally defaulted or meritless. With the opposing arguments under consideration, we now turn to the petition before the Court.

II.  STANDARD OF REVIEW

        Under the current version of the Antiterrorism and
Effective Death Penalty Act of 1996 ("AEDPA"), an application for
writ of habeas corpus from a state court judgment bears a
significant burden.  Section 104 of the AEDPA imparts a presumption
of correctness to the state court's determination of factual issues
— a presumption that petitioner can only rebut by clear and
convincing evidence.  28 U.S.C. § 2254(e)(1) (1994).  The statute
also grants significant deference to legal conclusions announced by
the state court, as follows:

> An application for a writ of habeas corpus on behalf of
> a State court shall not be granted with respect to any
> claim that was adjudicated on the merits in State court
> proceedings unless that adjudication of the claim -
>
>     (1) resulted in a decision that was contrary to, or
>     involved an unreasonable application of, clearly
>     established federal law, as determined by the
>     Supreme Court of the United States; or
>
>     (2) resulted in a decision that was based on an
>     unreasonable determination of the facts in light of
>     the evidence presented in the State court
>     proceeding.

28 U.S.C. § 2254(d).

        The United States Supreme Court, in the decision of
Williams v. Taylor, 529 U.S. 362, 120 S. Ct. 1495 (2000),
interpreted the standards established by the AEDPA regarding the
deference to be accorded to state court legal decisions, and more
clearly defined the two-part analysis set forth in the statute.
Williams, 529 U.S. at 404-405.  Under the first part of the review,

7

the federal habeas court must determine whether the state court decision was "contrary to" the "clearly established federal law, determined by the Supreme Court of the United States." As defined by Justice O'Connor, writing for the majority of the Court on this issue, a state court decision can be contrary to Supreme Court precedent in two ways: 1) "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law," or 2) "if the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to that reached by [the Supreme Court]." <u>Id</u>. She explained, however, that this "contrary to" clause does not encompass the "run-of-the-mill state-court decisions" applying the correct legal rule from Supreme Court cases to the facts of the prisoner's case." <u>Id</u>. at 406.

To reach such "run-of-the-mill" cases, the Court turned to an interpretation of the "unreasonable application" clause of § 2254(d)(1). It found that a state court decision can involve an unreasonable application of Supreme Court precedent: 1) "if the state court identifies the correct governing legal rule from the Court's cases but unreasonably applies it to the facts of the particular state prisoner's case," or 2) "if the state court either unreasonably extends a legal principle from our precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context should apply." <u>Williams</u>, 529 U.S.

8

at 407-408.  The Court specified, however, that under this clause,
"a federal habeas court may not issue the writ simply because the
court concludes in its independent judgment that the relevant
state-court decision applied clearly-established federal law
erroneously or incorrectly.  Rather, that application must also be
unreasonable."  Id. at 410.

III.     PROCEDURAL DEFAULT

         Respondent's first challenge to the Petition for Writ of
Habeas Corpus alleges that it is barred by principles of procedural
default.  The procedural default barrier, in the context of habeas
corpus, precludes federal courts from reviewing a state
petitioner's federal claims if the state court decision is based on
a violation of state procedural law that is independent of the
federal question and adequate to support the judgment.  Coleman v.
Thompson, 501 U.S. 722, 729, 111 S. Ct. 2546, 2553, reh'g denied,
501 U.S. 1277, 112 S. Ct. 27 (1991).  "In the context of direct
review of a state court judgment, the independent and adequate
state ground doctrine is jurisdictional. . . [b]ecause this Court
has no power to review a state law determination that is sufficient
to support the judgment."  Id., 501 U.S. at 729.  This rule applies
regardless of whether the state law relied upon is substantive or
procedural, id., and rests in part on respect for the integrity of
procedures "employed by a coordinate jurisdiction within the
federal system."  Wainwright v. Sykes, 433 U.S. 72, 88, 97 S. Ct.

9

2497, 2507, <u>reh'g denied</u>, 434 U.S. 880, 98 S. Ct. 241 (1977). Although the issue of procedural default is best addressed by the state courts in the first instance, a federal court may dismiss a petition as procedurally barred if state law would unambiguously deem it defaulted. <u>Carter v. Vaughn</u>, 62 F.3d 591, 595 (3d Cir. 1995).

Respondent stresses that several of petitioner's claims are procedurally defaulted in one of two ways. First, it asserts that because petitioner has failed to exhaust his direct appeal claims and could not do so now, they must be dismissed as procedurally defaulted. Second, it contends that the Pennsylvania Superior Court deemed one of petitioner's claims waived, thereby erecting a procedural bar to this Court's ability to consider it. We address each argument in turn.

A.    <u>Default by Failure to Exhaust</u>

Respondent contends that petitioner's first three habeas claims are defaulted because, although petitioner presented them to the Pennsylvania Superior Court on direct appeal, he never filed a request for allowance of appeal to the Pennsylvania Supreme Court. Maintaining that he has not exhausted his state court remedies and could not do so now, respondent urges the Court to dismiss these grounds for relief as procedurally defaulted.

Before a federal court may grant habeas relief to a state prisoner, the prisoner must exhaust his remedies in state court.

10

O'Sullivan v. Boerckel, 526 U.S. 838, 842, 119 S. Ct. 1728, 1731 (1999).  A petitioner is not deemed to have exhausted the remedies available to him if he has a right under state law to raise, by any available procedure, the question presented.  28 U.S.C. § 2254(c) (1994); Castille v. Peoples, 489 U.S. 346, 350, 109 S. Ct. 1056, 1059, reh'g denied, 490 U.S. 1076, 109 S. Ct. 2091 (1989).  In other words, a petitioner must invoke "one complete round of the State's established appellate review process," in order to exhaust remedies.  O'Sullivan, 526 U.S. at 845.  A habeas petitioner retains the burden of showing that all of the claims alleged have been "fairly presented" to the state courts, which demands, in turn, that the claims brought in federal court be the "substantial equivalent" of those presented to the state courts.  Santana v. Fenton, 685 F.2d 71, 73-74 (3d Cir. 1982), cert. denied, 459 U.S. 1115, 103 S. Ct. 750 (1983).  In the case of an unexhausted petition, the federal courts should dismiss without prejudice, otherwise, they risk depriving the state courts of the "opportunity to correct their own errors, if any."  Toulson v. Beyer, 987 F.2d 984, 989 (3d Cir. 1993).

However, "[i]f [a] petitioner failed to exhaust state remedies and the court to which petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred . . . there is procedural default for the purpose of federal habeas . . ."

<u>Coleman</u>, 501 U.S. at 735 n. 1; <u>McCandless v. Vaughn</u>, 172 F.3d 255, 260 (3d Cir. 1999).  The logic underlying this rule is that "[i]n the absence of [the procedural default doctrine] in federal habeas, habeas petitioners would be able to avoid the exhaustion doctrine by defaulting their federal claims in state court." <u>Coleman</u>, 501 U.S. at 732.

Under historical jurisprudence, failure to seek allowance of appeal from the Pennsylvania Supreme Court would have resulted in claims being deemed unexhausted.  On May 9, 2000, however, the Pennsylvania Supreme Court reversed this stance by issuance of a seminal <u>per</u> <u>curiam</u> order stating that, in all appeals regarding criminal convictions or PCRA matters, "a litigant shall not be required to petition for rehearing or allowance of appeal following an adverse decision by the Superior Court in order to be deemed to have exhausted all available state remedies respecting a claim of error." <u>In Re Exhaustion of State Remedies in Criminal and Post-Conviction Relief Cases</u>, No. 218 1, 2 (Pa. May 9, 2000). Therefore, when a claim has been presented to either the Superior Court, or to the Supreme Court of Pennsylvania, and relief has been denied, "the litigant shall be deemed to have exhausted all available state remedies for purposes of federal habeas corpus relief." <u>Id</u>. at 2.

On its face, that ruling appears to contradict the mandate of the United States Supreme Court in <u>O'Sullivan</u> that a

petitioner must invoke "one complete round of the State's established appellate review process," order to exhaust remedies. 526 U.S. at 845.   In that case, however, the Supreme Court recognized that the exhaustion doctrine is driven almost exclusively by comity interests and that it should be governed by the state's dictation of its own procedures.   Indeed, it emphasized that "nothing in our decision today requires the exhaustion of any specific state remedy when a state has provided that a remedy is unavailable."   Id. at 846-847.

Although the Third Circuit has yet to provide definitive guidance, every court in this circuit to reach the issue has concurred that Order 218 eliminates the mandate that habeas petitioners seek discretionary review from the Pennsylvania Supreme Court in order to satisfy the exhaustion requirement.   Lambert v. Blackwell, 175 F. Supp.2d 776, 784 (E.D. Pa. 2001), vacated in part, 205 F.R.D. 180 (E.D. Pa. 2002) ("Order No. 218 makes a petition for allocatur an extraordinary remedy that prisoners need not avail themselves of to be deemed to exhaust."); Mattis v. Vaughn, 128 F. Supp.2d 249, 261 (E.D. Pa. 2001) (Order No. 218 removes petitions for discretionary review from "one full round" of Pennsylvania's ordinary review process);[1] Blasi v. Attorney General

---

[1]    Judge Van Antwerpen, in a well-reasoned opinion in Mattis, succinctly set forth the logic underlying this position:

[T]he interests of comity would be greatly disserved by ignoring the pronouncements of state supreme courts that they see no need for prisoners to petition them for discretionary review before the

of Com. of Pennsylvania, 120 F. Supp.2d 451, 469 (M.D. Pa. 2000) aff'd, 275 F.3d 33 (3d Cir. 2001), cert. denied, 122 S. Ct. 1540 (2002) ("the order of the Supreme Court of Pennsylvania removes a petition for allocatur from the one complete round of Pennsylvania's established appellate review process.").

This case, however, involves a slight twist which prevents the petitioner from benefitting from the Pennsylvania Supreme Court's proclamation -- petitioner's time for seeking allocatur from the Pennsylvania Supreme Court, following the Superior Court's affirmation of his judgment of his conviction, expired prior to the enactment of Order 218. In Wenger v. Frank, 266 F.3d 218 (3d Cir. 2001), cert. denied, 122 S. Ct. 1364 (2002), the Third Circuit Court of Appeals explicitly held that Order 218 "did not retroactively alter the nature of 'the ordinary appellate review procedure' in the Commonwealth." Id. at 225. The court reasoned that (1) the language of the order itself suggests that it was intended to be prospective; (2) the primary interests behind the Order -- relieving the burden on state supreme courts and preventing delay -- would not be served by retroactive application; and (3) the federal habeas statute could not accommodate

> prisoners can seek federal habeas corpus relief . . . From the beginning, the purpose of the exhaustion doctrine has been to demonstrate respect for the state courts. Disregarding a state supreme court's explicit attempt to control its docket and to decline the comity extended to it by the federal court goes against the very purpose of the exhaustion doctrine and obliterates the concept of comity.

Mattis, 128 F. Supp.2d at 259.

retroactive application.  Id. at 225-226.  As a result, the Third
Circuit found that Order 218 "does not apply in cases in which the
time to petition for review by the state supreme court expired
prior to the date of the order."  Id. at 226; see also Aikens v.
Dragovich, 40 Fed. Appx. 709, 710-711, 2002 WL 1723832, *2 (3d Cir.
2002) (holding that Order 218 is not retroactive and does not apply
to defaults occurring before occurring before effective date of the
Order); Weaver v. Frank, 36 Fed. Appx. 693, 696, 2002 WL 1283396,
*3 (3d Cir. 2002) (where petitioner failed to include certain
habeas claims in his petition for allowance of appeal to the
Pennsylvania Supreme Court and where the time for filing that
petition expired long before the date of Order 218, claims are
procedurally defaulted and, hence, unreviewable absent a showing of
cause and prejudice or that a miscarriage of justice would result);
Mehta v. Walter, Civ. A. No. 00-4426, 2001 WL 894047, *2 (E.D. Pa.
Aug. 1, 2001) (same).

        In the case at bar, the Pennsylvania Superior Court
affirmed petitioner's conviction on July 9, 1999, giving him until
August 9, 1999 to seek allocatur from the Pennsylvania Supreme
Court.  He never did so with any of his direct appeal claims.
While Order 218 would excuse petitioner's omission, that Order did
not come into existence until nine months later.  As it does not
operate retroactively, it does not apply to this case.  Under
jurisprudence existing prior to Order 218, petitioner's failure to

15

seek allocatur results in the direct appeal claims remaining unexhausted. Because he now has no available state remedy by which to return and present these claims to the Pennsylvania Supreme Court, they, in turn, become procedurally defaulted.

B.  <u>Default by Waiver</u>

Respondent's second procedural default attack on petitioner's claims contends that petitioner's ninth habeas claim[2] has been deemed "waived" by the Pennsylvania Superior Court. Upon review of the relevant case law, we likewise find it to be defaulted.

Under the PCRA, a claim is waived if "the petitioner could have raised it but failed to do so before trial, at trial, during unitary review, on appeal or in a prior state post-conviction proceeding." 42 Pa.C.S.A. § 9544(b) (1998); <u>Commonwealth v. Lark</u>, 698 A.2d 43, 46 (Pa. 1997). Moreover, if the petitioner mentions an issue, but fails to develop any argument with respect to the issue in his brief, the issue may likewise be deemed waived. As explained by the Pennsylvania Superior Court, "[t]he argument portion of an appellate brief must be developed with a pertinent discussion of the point which includes citation to relevant authority. . . . When the appellant fails to adequately develop his argument, meaningful appellate review is not possible.

---

[2]  Petitioner's ninth claim alleges that trial counsel was ineffective for failing to impeach two witnesses for not having relative evidence - Wanda Weidner and expert witness Mark Rueben.

Th[e] Court will not act as new counsel . . ." <u>Commonwealth v. Genovese</u>, 675 A.2d 331, 334 (Pa. Super. Ct. 1996) (internal citations omitted); <u>see also</u> <u>Commonwealth v. Long</u>, 753 A.2d 272, 279 (Pa. Super. Ct. 2000); <u>Commonwealth v. Maris</u>, 629 A.2d 1014, 1016-1017 (Pa. Super. Ct. 1993). A petitioner acting <u>pro</u> <u>se</u> is not relieved of the duty to properly raise and develop appealable claims. <u>Commonwealth v. White</u>, 674 A.2d 253, 257 n. 6 (Pa. Super. Ct. 1996).[3] If a state court finds a claim to be waived, it thereafter becomes procedurally defaulted, thereby barring federal habeas review. <u>Werts v. Vaughn</u>, 228 F.3d 178, 192 n. 9 (3d Cir. 2000), <u>cert. denied</u>, 532 U.S. 980, 121 S. Ct. 1621 (2001) (quotations omitted) (holding that a state procedural default occurs when the state court refuses to hear the merits of the claim because the defendant waived a PCRA claim he could have raised in an earlier proceeding but failed to do so.).

In the matter before us, the Pennsylvania Superior Court, on appeal from the PCRA petition, declined to consider, on grounds of waiver, petitioner's allegation that trial counsel was ineffective for failing to impeach Commonwealth witnesses Wanda Weidner and Dr. Mark Reuben. Specifically, it held that, in his

---

[3] A state rule provides an independent and adequate basis for precluding federal review of a state prisoner's habeas claims only if: (1) the state procedural rule speaks in unmistakable terms; (2) all state appellate courts refused to review the petitioner's claims on the merits; and (3) the state courts' refusal in this instance is consistent with other decisions. <u>Peterkin v. Horn</u>, 176 F. Supp.2d 342, 353 (E.D. Pa. 2001), <u>amended on reconsideration in part</u>, 179 F. Supp.2d 518 (E.D. Pa. 2002). Each of these elements are satisfied with respect to the waiver rule.

brief to the court, he failed to detail exactly what testimony of the witnesses should or could have been impeached. Since this finding constituted procedural default on an adequate and independent state ground, this Court must decline to consider this claim on its merits.

C.    Exceptions to Procedural Default

To survive procedural default in the federal courts, the petitioner must "demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." Coleman, 501 U.S. at 749-750. The cause and prejudice analysis embraces two separate elements. A demonstration of cause sufficient to survive dismissal "must ordinarily turn on whether the prisoner can show that some objective factor external to the defense impeded counsel's efforts to comply with the state's procedural rule." Caswell v. Ryan, 953 F.2d 853, 862 (3d Cir.), cert. denied, 504 U.S. 944, 112 S. Ct. 2283 (1992) (citing Murray v. Carrier, 477 U.S. 478, 488, 106 S. Ct. 2639, 2645 (1986)); see also Jones v. Frank, 28 F. Supp.2d 956, 963 (E.D. Pa. 1998), aff'd, 202 F.3d 254 (3d Cir. 1999), cert. denied, 529 U.S. 1088, 120 S. Ct. 1720 (2000). Once cause is shown, the petitioner bears the additional burden of proving some resulting prejudice, i.e. that errors at trial "worked to [petitioner's] actual and substantial disadvantage, infecting his

entire trial with error of constitutional dimensions." <u>Murray</u>, 477 U.S. at 494 (quoting <u>United States v. Frady</u>, 456 U.S. 152, 170, 122 S. Ct. 1584, 1596, <u>reh'g denied</u>, 456 U.S. 1001, 102 S. Ct. 2287 (1982)).

Under the fundamental miscarriage of justice exception, a petitioner must demonstrate that a constitutional violation probably resulted in the conviction of an innocent defendant. <u>Murray</u>, 477 U.S. at 496. A petitioner meets the fundamental miscarriage of justice exception if he "establish[es] that under the probative evidence he has a colorable claim of factual innocence." <u>Sawyer v. Whitley</u>, 505 U.S. 333, 339, 112 S. Ct. 2514, 2519 (1992), <u>reh'g denied</u>, 505 U.S. 1244, 113 S. Ct. 21 (1992) (quoting <u>Kuhlmann v. Wilson</u>, 477 U.S. 436, 454, 106 S. Ct. 2616, 2627 (1986)). However, a fundamental miscarriage of justice occurs only in the "extraordinary case," of actual innocence. <u>Schlup v. Delo</u>, 513 U.S. 298, 321, 115 S. Ct. 851, 864 (1995). To establish the requisite probability of actual innocence, the petitioner must show, usually by way of new evidence, "that it is more likely than not that no reasonable jury would have convicted him." <u>Schlup</u>, 513 U.S. at 327; <u>Glass v. Vaughn</u>, 65 F.3d 13, 16-17 (3d Cir. 1995), <u>cert. denied</u>, 516 U.S. 1151, 116 S. Ct. 1027 (1996).

Petitioner satisfies neither of these exceptions. First, he makes no allegations of actual innocence that allow the Court to consider his habeas claims under a fundamental miscarriage of

19

justice theory.  Second, under the cause and prejudice exception, petitioner alleges only that direct appeal counsel refused to file a petition for allocatur to the Pennsylvania Supreme Court.  In support of this claim, he submits a letter, dated July 13, 1999, in which the public defender indicated that it was highly unlikely that the matter would be accepted by review by the Pennsylvania Supreme Court.  Petitioner for Writ of Habeas Corpus, at Exh. K. The letter further stated that because attorneys may be fined for filing a frivolous appeal and because he could receive a longer sentence if successful, the public defender's office would not file an appeal to the Pennsylvania Supreme Court on his behalf.  Id. Petitioner now contends that because he had no knowledge on how to proceed, nor the money to hire an attorney, he had to go to the prison law library.  The thirty-day time period allotted was insufficient for him to perfect an appeal to the Pennsylvania Supreme Court, thereby resulting in the loss of his rights.

It is well-established in the Third Circuit, however, that "[t]he absence of counsel is not enough." Caswell v. Ryan, 953 F.2d at 862.  The "cause" required to excuse a procedural default must result from circumstances that are "external to the petitioner, something that cannot fairly be attributed to him." Coleman, 501 U.S. at 753.  In Caswell v. Ryan, supra, the Third Circuit specifically found that counsel's withdrawal from the case after the Superior Court's decision did not constitute sufficient

cause, especially where the petitioner was made aware of the thirty day time limit and where petitioner was capable of filing subsequent petitions without the aid of counsel. Id. at 862. When the petitioner argued that he was unaware of the law with respect to such appeals, the court rejected his claim, noting that "ignorance alone does not constitute good cause." Id.

Likewise, in the case at bar, petitioner was promptly informed by Public Defender's Office, on July 13, 1999, that they would not be seeking allowance of appeal to the Pennsylvania Supreme Court, but that petitioner still had the right to either hire other counsel to do so or to pursue the claims himself. Moreover, the letter explicitly stated that any petition to the Pennsylvania Supreme Court must be filed "within 30 days of July 9, 1999." Petition for Writ of Habeas Corpus, at Exh. K. Petitioner nonetheless declined to take any action until almost nine months later when he filed his PCRA petition. His ability to draft and submit such a petition revealed that, while not a seasoned attorney, petitioner possessed the legal wherewithal to represent his own interests. Having waited nine months, despite being made aware of the strict thirty day time limit, seriously undermines his claims that his attorney's untimely withdrawal constituted cause for his failure to seek allowance of appeal from the Pennsylvania Supreme court. Consequently, we have no alternative but to dismiss his four procedurally defaulted claims for relief.

IV.  DISCUSSION OF THE MERITS

    A.   Trial Court Error in Refusing to Give Proper Instructions to the Jury Regarding Alibi and Late Complaint by the <u>Alleged Victim</u>

In his first non-defaulted claim for relief, petitioner argues that the trial court erred in failing to give proper instructions to the jury in two areas.  Primarily, he contends that the court should have instructed the jury on the failure of the victim to make a prompt complaint, where the victim did not make any complaint for well over a year after the alleged sexual assault.  Moreover, he argues that the court should have given the jury an instruction on his alibi defense.  Considering these arguments, we find the state court's rejection of these claims to be neither contrary to nor an unreasonable application of federal law.

A trial judge has "broad discretion in framing the form and language of the charge to the jury." <u>U.S. v. Traitz</u>, 871 F.2d 368, 383 (3d Cir.), <u>cert. denied</u>, 493 U.S. 821, 110 S. Ct. 78 (1989).  A single instruction to a jury may not be "judged in artificial isolation, but must be viewed in the context of the overall charge." <u>Donnelly v. DeChristoforo</u>, 416 U.S. 637, 645, 94 S. Ct. 1868, 1872 (1974) (internal quotations omitted).  A new trial will be ordered on account of the failure to give a proposed jury instruction "only if the instruction was correct, not substantially covered by other instructions, and was so important

that omission of the instruction prejudiced the defendant." <u>United States v. Pitts</u>, Crim. A. No. 91-279-10, 1992 WL 13017, *4 (E.D. Pa. Jan. 22, 1992) (citing <u>United States v. Leo</u>, 941 F.2d 181, 200 (3d Cir. 1991).

Reviewing petitioner's claim of the trial court's failure to give an instruction on the victim's late complaint, the Pennsylvania Superior Court noted that, under prevailing Pennsylvania law, a trial court need not instruct the jury on "prompt complaint" where the victim did not comprehend the offensiveness of the contact at the time of its occurrence. Because the court found that the eight-year old victim in this case did not understand the wrongful nature of the contact at the time it first occurred, was told to obey petitioner and was threatened by petitioner if he told anyone about the incidents, it concluded that the victim was under sufficient duress to legitimately explain his delay in complaining. In turn, it found no basis for a jury charge on prompt complaint.

We can discern no error of federal law in this ruling. Under the governing Pennsylvania law, as succinctly set forth by the Superior Court, a trial judge must instruct the jury on "the relevance of a delay in disclosure and the significance of a prompt complaint," "where the actual occurrence of the assault is at issue in the case." <u>Commonwealth v. Ables</u>, 590 A.2d 334, 340 (Pa. Super. 1991), <u>appeal denied</u>, 597 A.2d. 1150 (Pa. 1991) (citing

23

Commonwealth v. Snoke, 580 A.2d 295, 298 (Pa. 1990)).  "Where the victim *did not* comprehend the offensiveness of the contact at the time of its occurrence, the absence of an immediate complaint may not legitimately be used to question whether the conduct did in fact occur."  Id. (emphasis in original).  When there is no conclusive evidence regarding a minor's comprehension of such offensive acts, the court must consider other facts such as age, mental and physical condition, atmosphere and physical setting in which the incidents occurred, the extent to which the accused was in a position of authority, domination or custodial control and duress.  Ables, 590 A.2d at 340.  The Superior Court, in this case, appropriately considered all of these factors and reasonably concluded that a "prompt complaint" instruction was not warranted. We now decline to reverse this well-reasoned conclusion.

        With respect to his claim that the trial court failed to instruct the jury as to an alibi defense, petitioner argues that he himself took the stand and testified that he worked weekend nights and that the incidents did not happen.  Such testimony, he contends, justifies a corresponding jury instruction.  On review of this allegation, the Superior Court found that because the victim never testified as to the specific dates on which the incidents of abuse occurred, it was impossible for petitioner to present a plausible alibi defense.

        Again, we find this to be a well-founded decision.

Pursuant to Pennsylvania law, "[a]libi is a defense that places the defendant at the relevant time in a different place than the scene involved and so removed therefrom as to render it impossible for him to be the guilty party." <u>Commonwealth v. Whiting</u>, 187 A.2d 563, 566 (Pa. 1963). Where an alibi defense is presented, the trial court must instruct the jury that it should acquit if the alibi evidence, even if not wholly believed, raises a reasonable doubt as to the presence of the defendant at the scene of the crime when the offense was committed. <u>Commonwealth v. Roxberry</u>, 553 A.2d 986, 989 (Pa. Super. Ct. 1988), <u>aff'd</u>, 602 A.2d 826 (Pa. 1992). It is not necessary for an alibi defense to be corroborated in order to constitute an alibi; rather it may be established by the defendant's testimony alone. <u>Commonwealth v. Poindexter</u>, 646 A.2d 1211, 1218 (Pa. Super. Ct. 1994), <u>appeal denied</u>, 655 A.2d 512 (Pa. 1995). Where that testimony does not place the defendant elsewhere at the time of the crime, but simply constitutes a denial of guilt, however, an alibi instruction is not warranted. <u>Commonwealth v. Kolenda</u>, 676 A.2d 1187, 1191 (Pa. 1996).

In the case at bar, the record does not reveal that petitioner was entitled to an alibi instruction. As the state courts noted, the victim never specified the dates on which petitioner abused him. (N.T. 5/1/98, at p. 4). More specifically, the victim testified that he stayed overnight at his grandfather's residence on the weekends when the incidents occurred, and that

they occurred in the summers of 1995-1996. (N.T. 5/4/98, at pp. 13-14). Consequently, petitioner's testimony that he worked weekend nights and that the events did not happen did not necessarily place him in a different place than the scene involved "and so removed therefrom as to render it impossible for him to be the guilty party." <u>Whiting</u>, 187 A.2d at 566. Rather, his testimony merely constituted a denial of guilt, which is insufficient to mandate the issuance of an alibi instruction. As we discern no violation of due process in the trial court's refusal to give such an instruction, we deny habeas relief on this claim.

  B.   Trial Court Error in Going Beyond the Maximum Sentence
       for a First Time Felony

       Petitioner's second ground asserts that his sentence is unconstitutionally disproportionate because he was a first time offender. Specifically, he claims that the trial court incorrectly imposed consecutive, rather than concurrent sentences, thus extending the sentence beyond the maximum sentence of an event. Moreover, he contends that, during the sentencing, the trial court relied on information not in evidence.

       The Pennsylvania Superior Court considered this claim and remarked that, when imposing a sentence, a trial judge has the discretion to decide whether, given the facts of a particular case, a given sentence should be consecutive to, or concurrent with other sentences imposed. In addition, the state court noted that petitioner failed to identify the evidence upon which the trial

court allegedly improperly relied in giving the sentence.

Yet again, we find the state court's decision to be neither contrary to nor an unreasonable application of federal law. Under both federal law and Pennsylvania state law, trial courts are vested with the discretion to impose consecutive or concurrent sentences as required by the facts of the case.  See United States v. Velasquez, 304 F.3d 237, 241 (3d Cir. 2002); Commonwealth v. Rickabaugh, 706 A.2d 826, 847 (Pa. Super. Ct. 1997), appeal denied, 736 A.2d 603 (Pa. 1999).  Petitioner does not allege that any of the sentences he received exceeded the statutory maximum in themselves, but only that they were to run consecutively.  As this does not amount to any constitutional violation, it does not warrant any relief from this Court.

Moreover, as in the state court, petitioner has failed to indicate what objectionable information or evidence the trial court relied upon when imposing the sentence.  Although pro se petitions must be construed liberally,[4] a court has no obligation to comb through the trial transcripts in search of support for the petitioner's claims.  Hence, we dismiss this portion of the habeas petition as well.

---

[4] See Lewis v. Attorney Gen. of the United States, 878 F.2d 714, 722 (3d Cir. 1989) ("[A] pro se prisoner's pleadings should be ... construed liberally.").

C.    <u>Ineffective Assistance of Counsel Claims</u>

    1.    <u>Standard of Review for Ineffective Assistance</u>

        The Sixth Amendment to the United States Constitution recognizes the right of every criminal defendant to effective assistance of counsel.  U.S. CONST., amend. VI.  In the case of <u>Strickland v. Washington</u>, 466 U.S. 668, 104 S. Ct. 2052, <u>reh'g denied</u>, 467 U.S. 1267, 104 S. Ct. 3562 (1984), the Supreme Court set forth a two-prong test — both parts of which must be satisfied — by which claims alleging counsel's ineffectiveness are adjudged. First, the petitioner must demonstrate that his trial counsel's performance fell below an "objective standard of reasonableness." <u>Id</u>. at 688.  The Supreme Court has explained that:

> A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstance of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time.  Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy."

<u>Id</u>. at 689 (quoting <u>Michel v. Louisiana</u>, 350 U.S. 91, 107, 76 S. Ct. 158, 163-164 (1955)).  A convicted defendant asserting ineffective assistance must identify the acts or omissions that are alleged not to have been the result of reasoned professional judgment.  <u>Id</u>. at 690.  Then, the reviewing court must determine whether, in light of all circumstances, the identified acts or

28

omissions were outside "the wide range of professionally competent assistance." <u>Id</u>. Under Pennsylvania law, counsel is not ineffective for failing to raise baseless or frivolous issues. <u>Commonwealth v. Wilson</u>, 393 A.2d 1141, 1143 (Pa. 1978).

Pursuant to the second prong, the defendant must establish that the deficient performance prejudiced the defense. It requires a demonstration that counsel's errors were so serious as to deprive the defendant of a fair trial or a trial whose result is reliable. <u>Strickland</u>, 466 U.S. at 687. More specifically, the defendant "must show that there is a reasonable possibility that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." <u>Id</u>. at 694.

2. Ineffective Assistance of Trial Counsel for Failure to Provide Transcripts of Preliminary or Pretrial Hearing

Petitioner first finds fault with his trial counsel's failure to provide transcripts of his preliminary or pre-trial hearings. He notes that, without these transcripts, he was unable to effectively participate in his jury trial, especially given the less than three weeks between the preliminary hearing and the start of trial. As such, he asserts that counsel acted ineffectively, in

violation of his Sixth Amendment rights.[5]

Assuming *arguendo* that petitioner was in fact entitled to transcripts of his preliminary hearing, that he requested them from his attorney and that his attorney negligently failed to provide them, he has still failed to demonstrate that he suffered any prejudice from the absence of these transcripts.  As noted above, the second Strickland prong requires a showing that, but for counsel's unprofessional errors, the results of the proceeding would have been different.  Petitioner has made no such showing. A generalized statement that he could not effectively participate in trial does not equate to proof that the outcome of his trial was questionable or fundamentally unfair.  Consequently, we deny relief on this claim.

> 3.    Ineffective Assistance of Trial Counsel for Failure
>        to Investigate Meritorious Facts of Alibi and
>        Failure to Ask for Trial Postponement to Bring in
>        Alibi Evidence

Petitioner's next two claims again involve his alleged alibi evidence.  In particular, he contends that trial counsel made no effort to investigate potential alibi witnesses until after the pre-trial hearing, even though petitioner had already talked to counsel about putting forth an alibi defense.  Counsel's failures ultimately resulted in the filing of a late notice of alibi and the

---

[5]    The Pennsylvania Superior Court dismissed this claim because allegations "relating to trial counsel's stewardship at a preliminary hearing are not cognizable [under the PCRA] since the truth-determining process is not implicated."  Commonwealth v. Folk, No. 1916 MDA 2000, 8 (Pa. Super. Ct. 2000) (citing Commonwealth v. Lassen, 659 A.2d 999, 1007 (Pa. Super. Ct. 1999)).

subsequent refusal of the trial court to permit any alibi testimony. Thereafter, counsel neglected to move for a continuance so that the alibi testimony and evidence could be brought forth properly.

The state court found no fault on the part of counsel due to the fact that the victim never testified regarding the specific dates and times of the incidents. The state court further noted that the alleged omissions by counsel were not prejudicial since petitioner admitted to two other persons that he had performed oral sex on the victim. Reviewing this ruling under our deferential standard, we find it to be neither contrary to nor an unreasonable application of federal law.

As noted above, the victim testified that he stayed overnight at his grandfather's residence on the weekends when the incidents occurred, and that they occurred in the summers of 1995-1996. (N.T. 5/4/98, at pp. 13-14). In support of his claim of ineffectiveness for failure to investigate an alibi to these charges, petitioner submits an affidavit from his wife, his boss at Delicious Memories Bakery and his boss at Arner's family restaurant indicating that he worked from Monday to Saturday between 6:00 p.m and 5:30 to 8:00 p.m., and every Saturday and Sunday in the summer from 9:00 p.m. until at least 5:30 a.m. See Petition for Writ of Habeas Corpus, at Exhs. C, D and E. These affidavits, however, also reveal that petitioner was off from weekend work at Arner's

Restaurant from July 10, 1995 and August 15, 1995. Id. Moreover, the affidavits say nothing specifically about the summer of 1996. Id. Because the victim did not specify the precise dates and times of the various incidents of abuse, petitioner's evidence cannot establish any alibi.    In addition, as the state court noted, petitioner admitted to two other persons that he had given the victim oral sex. Commonwealth v. Folk, No. 1159 Harrisburg, 4 n. 8 (1998).  In turn, then, petitioner stands hard-pressed to prove that counsel's failure to investigate these facts or to move for a continuance so that these facts may be presented a trial necessarily resulted in any prejudice sufficient to undermine confidence in the outcome of his trial.

> 4.    Ineffective Assistance of Trial Counsel for Misrepresenting Himself to the Jury During Trial

In his next ineffective assistance claim, petitioner contends that, at one point during the trial, counsel mistakenly referred to himself as "the Commonwealth."  Such an error, he maintains, left the jury with a bad impression of counsel's professionalism and competency.  Moreover, as this happened when counsel was calling petitioner to the stand to testify, petitioner argues that his mistake "debased" him in view of the jury. Ultimately, petitioner asserts that he suffered prejudice at the hands of counsel.

On review of this claim, the Pennsylvania Superior Court noted initially that this allegation was not reviewable under the

PCRA as it implicated neither the truth-determining process nor any of petitioner's constitutional rights.  It went on to hold that, even considering this claim on its merits, petitioner failed to show that he was prejudiced by trial counsel's "obvious slip-of-the-tongue."

        We find no basis on which to disagree with the state courts.  During petitioner's trial, the court instructed trial counsel to call the next defense witness.  Thereafter, trial counsel stated, "[t]he Commonwealth would call Russell Folk – I'm sorry – defense would call Russell Folk."  (N.T. 5/4/98, at p. 171).  Certainly, such a minor misstatement, which was immediately corrected by counsel, cannot be said to fall below any objective standard of professionalism so as to render counsel's performance constitutionally ineffective.  Moreover, aside from a slight twinge of embarrassment that petitioner may have felt, he has failed to prove any prejudice such that we can conclude that his constitutional rights have been violated.

        5.    Ineffective Assistance of Trial Counsel for Failure
              to Object to Improper Instructions to Jury on Alibi
              and Late Complaint

        Petitioner's next ineffectiveness claim is merely a re-styling of his claim, discussed above, regarding the absence of jury instructions on either late complaint or alibi.  As we discussed earlier, the trial court did not err in failing to instruct the jury on issues of "late" complaint or on issues of

alibi credibility.  Because counsel cannot be ineffective for failing to raise meritless claims, Chianti v. Frank, 98-6151, 2001 WL 21496, *7 (E.D. Pa. Jan. 9, 2001), we must find that counsel did not violate the Sixth Amendment when failing to object to the absence of jury instructions identified by petitioner.

> 6.    Ineffective Assistance of Trial Counsel for Failure to Present Character Evidence at Trial or Sentencing

In this claim, petitioner attacks counsel's failure to present character evidence on his behalf, either at trial or at sentencing.  He alleges that trial counsel had subpoenaed two character witnesses, Edward Boucher and Darlyn Lesher, both of whom were present at the jury trial.  Counsel, however, failed to call them to the stand and then failed to give petitioner a rational reason for not putting forth this evidence of good character.

The Pennsylvania Superior Court considered this precise claim and outright rejected it as meritless.  First, it noted that, in his PCRA brief, petitioner failed to indicate what character evidence could have been presented or how such evidence would have been beneficial to him.  Second, it found that, at trial, the Commonwealth stipulated to petitioner's character and the trial court advised the jury that if character witnesses had been called, they would have testified to petitioner's reputation for honesty. As such, it concluded that petitioner suffered no prejudice from counsel's failure to call witnesses.

34

Again, this decision is neither contrary to nor an unreasonable application of federal law. Decisions on which witnesses to call to testify are generally strategic decisions entrusted to counsel. United States v. Merlino, 2 F. Supp.2d 647, 662 (E.D. Pa. 1997); United States v. Griffin, Crim. A. No. 91-612, 1993 WL 34927, *5 (E.D. Pa. Feb. 9, 1993). Counsel need not call every suggested witness — only those likely to assist their case. Merlino, 2 F. Supp.2d at 662. To prove that counsel was ineffective for failing to call a witness, petitioner must show that: (1) the witness existed; (2) the witness was available to testify for the defense; (3) counsel knew or should have known of the existence of the witness; (4) the witness was willing to testify for the defense; and (5) the absence of the witness was so prejudicial as to have denied petitioner a fair trial. Commonwealth v. Holloway, 739 A.2d 1039, 1048 (Pa. 1999), cited in, Blasi v. Attorney General of the Commonwealth of Pennsylvania, 120 F. Supp.2d 451, 474 (M.D. Pa. 2000), aff'd, 275 F.3d 33 (3d Cir. 2001), cert. denied, 122 S. Ct. 1540 (2002). "[D]efense counsel has no obligation to call a witness whose testimony would not have exculpated the petitioner." Marra v. Larkins, 111 F. Supp.2d 575, 585 n. 13 (E.D. Pa. 2000), aff'd, 46 Fed. Appx. 83, 2002 WL 1980413 (3d Cir. 2002).

In the case at bar, petitioner has satisfied the first four elements of the Holloway inquiry, but fails to meet element

35

five -- the showing of prejudice. Although he identified the names
of the individuals which he believes counsel should have called as
character witnesses, he has made no effort to reveal what testimony
they would have potentially given or how they would have assisted
his defense. Moreover, as found by the state court, the
Commonwealth already stipulated to petitioner's character for
honesty and the jury was so instructed as to that stipulation. As
petitioner has not proven that he would have obtained any
additional benefit from the actual testimony of his two alleged
character witnesses, we decline to reverse the ruling of the state
courts on this issue.

> 7.   Ineffective Assistance of Trial Counsel for Refusal
>      to File a Direct Appeal

Petitioner's last challenge to his trial counsel's
performance alleges that counsel's failure to perfect his appeal in
challenging the trial court's preclusion of the alibi witnesses
constituted ineffective assistance of counsel. Specifically,
petitioner asserts that when he told counsel that he wanted to
appeal, counsel responded by saying that he did not do appeals.
Thereafter, petitioner had to request assistance from the Public
Defender's Office.

Just as the PCRA court found this claim to be without
merit, so does this Court. Even assuming that counsel was
ineffective for refusing to file the appeal, petitioner cannot
demonstrate the requisite prejudice. Immediately after sentencing,

new counsel was appointed and a timely appeal was filed, alleging, *inter alia*, petitioner's various alibi claims. As such, petitioner was not deprived of his appellate rights. In fact, the appointment of new counsel allowed petitioner the opportunity to challenge the ineffectiveness of his trial counsel for failure to file a timely notice of alibi. Thus, we dismiss this claim without relief.

    8. <u>Ineffective Assistance of Direct Appeal Counsel</u>

    Finally, petitioner sets forth numerous challenges to the effectiveness of his direct appeal counsel. Addressing each individually, we find none of them to have merit.

    a. <u>Failure to Assist Defendant with a Copy of Transcripts</u>

    Petitioner initially contends that when appellate counsel asked him what issues he wished to appeal, he responded that he needed a copy of all transcripts so as to point out the many failures of trial counsel. Despite his requests, however, the Public Defender's Office declined to send him copies of those transcripts, claiming that they were necessary for their continued work on his case. Such refusals, petitioner maintains, denied him effective assistance of counsel.

    Even if we were to find that appellate counsel was obligated to send petitioner the transcripts, we again cannot detect any prejudice suffered. The appeal did allege four different claims, including the trial court's refusal to permit alibi witnesses and trial counsel's failure to file a timely alibi

notice.  Moreover, we have reviewed and found none of petitioner's remaining ineffectiveness claims to have any merit.  As such, even had petitioner received his transcripts and been able to assure that they claims were included in his appeal, they would have likely been found baseless.

          b.    Failure to Show that There Indeed was Evidence that an Alibi Did Exist or to Interview the Witnesses Who Would Have Shown that Defendant Could Not Be in Two Places at the Same Time

Petitioner contends that appellate counsel made no effort to interview or obtain sworn statements from witnesses who would have testified at the jury trial with respect to petitioner's alibi.  The sworn statements were obtained by petitioner himself, only after counsel failed to do so on direct appeal.

As repeatedly discussed above, petitioner has failed to establish how these "alibi witnesses" would have exculpated him given (1) the fact that the victim never testified as to precise dates or times for the various acts of abuse and (2) the fact that petitioner admitted to two other persons that he had performed these acts.  Consequently, we decline to grant habeas relief on this claim.

          c.    Failure to Show the Many Points Where Trial Counsel's Representation was Below Effective Assistance

Petitioner asserts that appellate counsel failed to argue on direct appeal the many issues of trial counsel ineffectiveness raised in his PCRA petition and habeas petition.  Such an omission

38

allegedly deprived him of due process.

To again reiterate, appellate counsel cannot be ineffective for failing to raise meritless claims. <u>Swainson v. Varner</u>, Civ. A. No. 99-6480, 2002 WL 241024, *11 (E.D. Pa. Feb. 19, 2002). As we have found petitioner's various allegations of ineffective assistance of counsel to be unfounded, we summarily deny this claim.

> d.    Appeal counsel Sent Defendant a Threatening Letter, which Stated that If He Appealed to the Supreme Court and Won a New Trial, He <u>Would Most Likely Receive More Time.</u>

Petitioner's last habeas claim asserts that appellate counsel sent a threatening letter to petitioner, refusing to file an appeal and indicating that if he did so, he would face more jail time. This letter, according to petitioner, "showed the prejudice that has been allowed to enter the judicial system, thus depriving defendant of Due Process under the U.S. Constitution." Memorandum in Support of Petition for Writ of Habeas Corpus, at p. 16.

The PCRA court considered this claim and found that the letter sent to petitioner by appellate counsel did not threaten petitioner to stop the appeal process. It found, rather, that the letter merely set forth counsel's professional opinion, which happened to be unfavorable to petitioner.

This Court finds no basis on which to disagree. The letter sent to petitioner on July 13, 1999, stated as follows:

I am sorry to inform you that we have just received the

opinion of the Superior Court affirming your conviction.
. . .

This means that the appellate court rejected our
arguments and will take no action to undo Judge
Lieberman's orders.  You do have the right to petition
the Supreme Court of Pennsylvania to hear the matter,
within 30 days of the July 9, 1999 order, but it is
totally discretionary with the Supreme Court if they will
accept any case for review.  Normally the Supreme Court
accepts only major cases which will make new law for many
other situations, and it is highly unlikely your matter
would be accepted for review.  However, because we can
see no viable appellate issues, because the courts have
ruled that both you and your attorney can be fined for
filing a frivolous appeal, and because even if we were
successful you could receive a longer sentence, this
office will not file an appeal for you to the Supreme
Court.  You have the right to seek other counsel to do
so, or to pursue any claims yourself which you feel
should be heard, but any Petition to the Supreme Court
must be filed within 30 days of July 9, 1999.

Please understand that if we thought there was any hope
of securing relief or any benefit to you, or if there was
any issue in your case which could be reasonably argued,
we would not hesitate to file the appeal to the Supreme
Court for you.

Petition for Writ of Habeas Corpus, at Exh. K.  At no point did

counsel "threaten" the petitioner.  Rather, she just indicated her

professional belief that any appeal to the Pennsylvania Supreme

Court would be frivolous and potentially damaging to petitioner's

case.  As a result, she stated that she would not file one on

petitioner's behalf.  Petitioner could have proceeded on his own or

through another attorney, but chose not to do so.  In any event,

counsel's actions do not constitute ineffective assistance.

V.    CONCLUSION

        In light of the foregoing, this Court finds no basis on

40

which to grant habeas relief to petitioner.  As such, we recommend that the petition before the Court be denied and dismissed with prejudice.


### RECOMMENDATION

AND NOW, this            day of *November*, 2002, IT IS RESPECTFULLY RECOMMENDED that the Petition for Writ of Habeas Corpus be DENIED AND DISMISSED WITH PREJUDICE.  There is no probable cause to issue a certificate of appealability.


_____
CHARLES B. SMITH
UNITED STATES MAGISTRATE JUDGE